IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SAMANTHA SELLERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO _____ |
| | ) |
| WOOD COUNTY, TEXAS; SHERIFF | ) |
| BILL WANSLEY, Individually, and in his | ) |
| Official Capacity;  CHIEF DEPUTY | ) |
| WES CRIDDLE, Individually, and in his | ) |
| Official Capacity; LIEUTENANT | ) |
| JERRY BLAYLOCK, Individually, and in | ) |
| his Official Capacity; | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff, Samantha Sellers ("Plaintiff"), files this Original Complaint complaining of Wood County, Texas; Wood County Sheriff Bill Wansley, Chief Deputy Wes Criddle, and Lieutenant Jerry Blaylock (hereinafter collectively referred to as "Defendants"), and, for causes of action, would respectfully show the Court the following:

**I.
PARTIES**

1.      Plaintiff, Samantha Sellers is an individual residing at 319 County Road 1658, Alba, Wood County, Texas 75410. Ms. Sellers is a resident of Wood County, Texas.

2.      Defendant, Wood County, is a county of the State of Texas.  Wood County funds and operates the Wood County Sheriff's Office.  Defendant, Wood County is responsible for the implementation of the policies, procedures, practices and customs, as well as the acts and omissions, challenged by this suit.  Defendant Wood County is also responsible for insuring that

all of its offices, including the Wood County Sheriff's Office, and its agents and employees obey the laws of the State of Texas and the United States and are in compliance with Federal and State law, department or agency policies, rules, and regulations, and related standards of care. Defendant, Wood County, may be served by serving its County Judge, Bryan Jeanes, 100 S. Main Street, Quitman, Wood County, Texas 75783 or wherever he may be found.

3.      Defendant, Sheriff Bill Wansley, is an elected official and employee of Wood County, Texas. He may be served at his place of employment, Wood County Sheriff's Office, located at 402 S. Stephens, Quitman, Wood County, Texas 75783 or wherever he may be found.

4.      Defendant, Chief Deputy Criddle, is an employee of Wood County, Texas. He may be served at his place of employment, Wood County Sheriff's Office, located at 402 S. Stephens, Quitman, Wood County, Texas 75783 or wherever he may be found.

5.      Defendant, Lieutenant Jerry Blaylock, is an employee of Wood County serving as a Lieutenant Sheriff Deputy and in the dual role as head of the Wood County Sheriff's Office Criminal Investigations Division ("CID"), in which is he in charge of the Wood County Sheriff's Office internal investigations. He may be served at his place of employment, Wood County Sheriff's Office, located at 402 S. Stephens, Quitman, Wood County, Texas 75783 or wherever he may be found.

## II.
## JURISDICTION AND VENUE

6.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 since Plaintiffs are suing for relief under 42 U.S.C. § 1983. Further, this court has subject matter jurisdiction over Plaintiff's state law causes of action pursuant to 28 U.S.C. § 1367(a) because all

of Plaintiff's claims derive from a common nucleus of operative fact, and they are such that they would ordinarily be expected to be tried in one judicial proceeding.

7. Venue is appropriate under 28 U.S.C. § 1391(b) in the United States District Court; Eastern District, Marshall Division, since Wood County was the location of the events made the basis of this cause of action, and Wood County is located within the Eastern District of Texas.

### III.
### FACTS AND ALLEGATIONS

1. On August 3, 2009 Samantha Sellers was hired by the Wood County Sheriff's Office and deputized by Sheriff Bill Wansley as a Deputy Sheriff.

2. After a few short months on the job, Deputy Sellers began to realize, through a string of incidents, that the Wood County Sheriff's Office had a history of "looking the other way" as the male deputies and supervisors committed numerous acts of violence, alcoholism, and malfeasance while in uniform and using county property, both on and off duty.

3. The first incident occurred one evening on or around the end of January 2010 when fellow Deputy, Rusty Owens, showed up at Ms. Sellers' home unannounced with his fourteen year old child driving his vehicle because he was heavily intoxicated; both were off-duty at the time. After a short conversation, Ms. Sellers advised Deputy Owens that he needed to leave and offered to drive him and his son home. However, Deputy Owens refused and quickly left, again, with his son still driving. The next morning Ms. Sellers reported the incident to her supervisor, Sergeant Lee Wilkins; no disciplinary or corrective action was ever taken.

4. The next incident occurred about two months later around the end of March 2010 at an off-duty social gathering at Sergeant Wilkins' home, which included Sgt. Wilkins, his wife

3

Laura, and Ms. Sellers. During the evening, Sgt. Wilkins, who was extremely intoxicated, became hostile and, at one point, pinned Ms. Sellers up against a truck and attempted to kiss her. Due to his level of intoxication, Ms. Sellers was able to push him away, and she immediately left and returned home. The next morning Sgt. Wilkins' wife, Laura, called Ms. Sellers on her personal phone and told her that after she had left, Sgt. Wilkins physically assaulted her, shot up his own home using his county issued pistol, aimed the gun at her, then himself, and finally ran off into the woods in a drunken stupor. Despite Ms. Sellers' advice, Laura Wilkins refused to make an official report against Sgt. Wilkins.

5. Next, one evening around the end of May 2010, Deputy Rusty Owens again showed up at Ms. Sellers home unannounced and drunk with a female passenger. Ms. Sellers took his keys and gave them to the female passenger, who was sober, and they drove off. The next day, fellow Deputy, Aaron Warren, who was on duty that evening, told Ms. Sellers that Deputy Owens was picked up by the local city police in the neighboring town of Mineola, Texas for driving drunk around the town's Wal-Mart and causing a public scene. Ms. Sellers reported the incident to both of her supervisors, Sergeant Jayson Farmer and Sergeant Lee Wilkins; neither initiated disciplinary action. Finally, Deputy Owens was given a three-day suspension, which he never served, after Ms. Sellers also reported the incident to Sgt. Kilan Polk.

6. On the afternoon of August 31, 2010, a fellow Deputy contacted Ms. Sellers, who was on duty, and informed her that he had been "hanging out" with Sgt. Wilkins at his home all morning and that Sgt. Wilkins, who was scheduled to report for duty that evening at 5:00 p.m., was continuously drinking alcohol all morning. Although Ms. Sellers had assumed Sgt. Wilkins would simply take the day off given the circumstances, Sgt. Wilkins reported for duty by radio at

5:30 p.m. She immediately reported to Sgt. Farmer about Sgt. Wilkins' drinking that morning; no disciplinary action was taken.

    7.    In the early morning (night-time) hours of September 7, 2010, Sgt. Wilkins became overly intoxicated and began leaving slurred voicemails on Ms. Sellers' private cellular telephone. After Ms. Sellers did not respond to these drunken voicemails, Sgt. Wilkins got on the Wood County Sheriff's official dispatch radio signal and began drunkenly asking whether Ms. Sellers was on duty at that time. This was the second time in a weeks time that Sgt. Wilkins had used the dispatch radio while drunk. After Sgt. Farmer, then on-duty, responded and informed Sgt. Wilkins that Ms. Sellers was not on duty at that time, it became clear that Sgt. Wilkins was very angry and growing hostile. Ms. Sellers decided to avoid any contact with Sgt. Wilkins during this early morning episode. However, Ms. Sellers received a personal call the afternoon of that same day from Sgt. Wilkins' wife asking if she to come to Plaintiff's home. When Ms. Mrs. Wilkins arrived she told Ms. Sellers that Sgt. Wilkins had physically abused and assaulted her at around 3:30 a.m. that morning. Plaintiff took photographs of the bruises on Mrs. Wilkins' arms and legs, immediately reported the incident to Sgt. Farmer, and took Mrs. Wilkins to the Sheriff's Office to make a report.

    8.    At this point, thanks to Mrs. Wilkins finally gathering the courage to report her husband for physical abuse and assault, Defendants could no longer get away with ignoring Ms. Sellers' reports regarding Sgt. Wilkins and Deputy Owens' misconduct, and they were finally forced to take disciplinary and corrective action. However, Deputy Owens was merely given a fifteen-day suspension, and Sgt. Wilkins was given an Honorable Discharge while no charges were filed against him. Further and most shocking, on September 21-2010, Ms. Sellers was called into Sheriff Wansley's office and made aware that has been the subject of an internal

investigation by Lieutenant Jerry Blaylock related to the above-mentioned incidents because she had violated an un-named section of the Wood County Sheriff's Department for: 1) failing to report that Sgt. Wilkins had shot up his home to the Texas Department of Child Protective Services, and 2) for not reporting the above-mentioned incidents sooner. Plaintiff was understandably scared and confused, because she had actually reported those several incidents, which she felt was the right thing to do. Admittedly Ms. Sellers, being terrified that she might lose her job and ability to provide for her three children as a single mother, signed the Disciplinary Action statement, which subjected her to thirty (30) days of suspension to be served non-sequentially.  Sheriff Bill Wansley also singed the statement, and Chief Deputy Criddle told her to keep working because he would tell her when and on which days to serve her suspension since they were low on man-power at the time.

9. By late March, 2011, Ms. Sellers had, pursuant to Chief Deputy Criddle's instruction, only served half of her 30 day suspension. Since her signed Disciplinary Action order stated that her suspension must be completed by March 2011, on March 27, 2011, Chief Deputy Criddle attempted to force Ms. Sellers to sign an addition order, which extended her time to complete her original 30 days of suspension for an addition six months. Ms. Sellers had finally had enough and refused to sign such statement. The next day she filed a Charge of Discrimination complaint with the U.S. Equal Employment Opportunity Commission, Dallas Division against the Wood County Sheriff's Department alleging sexual discrimination in violation of Title VII of the Civil Rights Act of 1964 because several fellow male deputies, who also knew of the incidents related to her suspension also failed to report such incidents, yet they were not disciplined. She was issued a Dismissal and Notice of Rights to Sue from the EEOC on June 29, 2011, which would expire after ninety days.

6

10.     Just a couple weeks after Ms. Sellers right to sue letter expired the retaliation began. She was moved from the night-shift to the day-shift by Chief Deputy Criddle who claimed the basis was to more closely monitor her for failing to make three reports on time because she waited until the following day after taking such calls to make her written reports. However, Ms. Sellers believes the sole reason for moving her to the day-shift of because Chief Deputy Criddle knew that she had three children and needed to work the night-shifts in order to watch her children during the day. She believed the move was intended to retaliate against her by inconveniencing her in order to force her to resign.

11.     Ms. Sellers, following the county's grievance procedure filed a written grievance with her immediate supervisors on October 27, 2011 reporting that she believed Chief Deputy Criddle had moved her to the day-shift as a retaliation for filing the March 28, 2011 EEOC compliant against Criddle. This grievance ultimately was appealed and heard by the County Commissioner's Court. She simultaneously reported Criddle to the County Judge, Bryan Jeans that same week.

### IV.
### CAUSES OF ACTION

12.     Plaintiffs re-allege paragraphs 1 and 15, inclusive, with regard to all causes of action.

### V.
### CLAIMS UNDER 42 U.S.C. §1983 AND THE 14TH AMENDMENT TO THE U.S. CONSTITUION AS TO ALL DEFENDANTS

13.     Defendants acting under color of state law and acting pursuant to customs and policies of Wood County deprived Plaintiff Samantha Sellers of rights and privileges secured to her by the 14th Amendment to the U.S. Constitution and by other laws of the United States, by

depriving her of her liberty interest without affording her due process of law in violation of 42 U.S.C. § 1983, the 14th Amendment, and other provisions of federal law.

14. Defendant Wood County, a political subdivision of the State of Texas, is a "person" subject to suit under 42 U.S.C. § 1983, which provides a statutory cause of action for damages against any person, acting under color of state law, who causes any deprivation of any right secured by the U.S. Constitution.

15. Further, Defendant Wood County is liable under 42 U.S.C. § 1983 for all actions the Wood County Sheriff's Department, an agency of Wood County, and for all actions by the Sheriff Bill Wansley, because Wood County delegated final policymaking authority to act on its behalf to Sheriff Bill Wansley by virtue of the County's conduct and practices in acknowledging Wansley's power to define all Sheriff's Office objectives and to choose the means of achieving those objectives without county supervision. Further, Wood County hasan official policy, custom, and patterned history of allowing the County Sheriff to terminate Deputy Sheriffs without due process of law, and without requiring approval or ratification of such employment decisions.  Finally, in Texas that a county sheriff is the final policymaker by implied delegation in concerning county law enforcement county sheriff is an elected office, and because County Deputy Sheriffs serve at the pleasure of the Sheriff under Texas Law.

16. Defendants Bill Wansley, Wes Criddle, and Jerry Blaylock are all liable under 42 U.S.C. § 1983 in their individual capacities because all of them acted, both individually and in concert, under color of state law to cause the deliberate deprivation of Ms. Seller's liberty interest without due process of law. Bill Wansley, acting under color of state law caused the deprivation of Plaintiff's liberty interest without due process of law, because he signed the termination letter, which included the stigmatizing Texas Rangers allegation.

17. Sheriff Wansley is not excused from personal liability under any qualified privilege because he did not act upon an objectively reasonable reliance on existing law when he failed to inquire as to the veracity of Blaylock's investigation report, which is the document of inception for the false charge that Ms. Sellers was under Texas Rangers investigation. Further, Defendant Wansley cannot claim objectively reasonable reliance on existing law when he intentionally failed and refused to respond to Ms. Sellers February 6, 2012 letter formally requesting a chance to clear her name and requesting a hearing.

18. Moreover, Defendant Wes Criddle is also individually liable because he was acting under color of state law, and without objectively reasonable reliance on existing law when he relayed the recommendation to terminate Ms. Sellers to Sheriff Wansley without even having a completed internal investigation.  Defendant Jerry Blaylock's internal investigation report on Ms. Sellers wasn't even completed until two days after her termination. Further, Ms. Sellers' letter requesting a hearing and chance to clear her name was also addressed to Wes Criddle in addition to Bill Wansley.

19. Defendant Jerry Blaylock is individually liable under § 1983 because he was acting under color of state law and without objective reliance on existing law when he knowingly and intentionally included false and stigmatizing information in his investigation report on Ms. Sellers regarding the alleged Texas Rangers investigation.

20. Plaintiff Samantha Sellers had an undeniable right under The 14th Amendment to the U.S. Constitution to be afforded due process of law before Defendants deprived her life, liberty, or property. Due Process of law encompasses not only substantive due process, but also procedural due process, which generally secures any person's right to adequate notice and

hearing, in one form or another, when a State deprives them of a property interest or liberty interest.

21. Ms. Sellers had a liberty interest under the 14th Amendment to the U.S. Constitution because Defendants discharged her from her public employment position under circumstances that put her reputation, honor, and integrity at stake. Specifically, when Sheriff Bill Wansley terminated Ms. Sellers for failing to make a written report of the alleged criminal act concerning the Deanna Combs telephone call, Lt. Jerry Blaylock attempted to bolster the validity of their unfounded allegation against Ms. Sellers by trying to incite the Texas Rangers to investigate Ms. Sellers for criminal liability for failure to make a written report of a child endangerment and, later on, aggravated assault with a deadly weapon. Thus, the circumstances of Ms. Sellers' discharge gave rise to a liberty interest, which guarantees a right to procedural due process under the 14th Amendment to a procedural opportunity to clear her name before Defendants wrongfully terminated her employment.

22. Accordingly, Defendants were mandated by the 14th Amendment to afford Ms. Sellers a hearing or equivalent opportunity when it discharged her under circumstances that will, and have done, harm to her reputation, honor, and integrity as a peace officer.  Since Plaintiff was discharged under circumstances that harmed her reputation as a peace officer, and she was never given any meaningful opportunity to clear her name, Defendants deprived her of such liberty interest without procedural due process of law in violation of the 14th Amendment.

23. Further, Plaintiff is entitled to recover damages against Defendants pursuant to 42 U.S.C. § 1983 for deprivation her liberty interest because (1) she was discharged from public employment; (2) defamatory and stigmatizing charges were made against her; (3) the charges were made in connection with her discharge; (4) the charges were false; (5) no meaningful pre-

discharge public hearing was held; (6) the charges were made public; (7) she requested a hearing in which to clear her name; and (8) the request was denied.

24. Specifically, the Wood County Sheriff's Office is a public employer and agency of Wood County, Texas. Plaintiff was a public employee because she was employed as a Deputy Sheriff by the Wood County Sheriff's Department. She was discharged by a letter of termination signed by Sheriff Bill Wansley on February 15, 2012, which was personally delivered to her home by Lt. Jerry Blaylock and Chief Deputy Criddle.

25. Charges that Ms. Sellers was under investigation by the Texas Rangers were and still are incredibly stigmatizing against her among the law enforcement community. Not only does this charge damage her reputation as a competent peace officer, but such a charge damages her likelihood of finding substantially similar employment as a peace officer elsewhere. Further, stigmatizing charges against Ms. Sellers were clearly made in connection with her discharge because both are based on her failure to make a written report of an alleged criminal felony that never in fact occurred.

26. The charge by Defendants that Ms. Sellers was under investigation by the Texas Rangers was unequivocally false. Plaintiff sent the Texas Rangers and the Texas Department of Public Safety, through her attorney, a letter requesting any information regarding their investigation on her. The response received from the Texas Rangers plainly stated that Ms. Sellers was not under investigation for any alleged crime, had not been in the past and would not be in the future for any conduct related to the incident made the basis of this suit.

27. Further no pre-discharge hearing or equivalent opportunity was ever held nor allowed by Defendants. In fact, Defendants never even responded to a letter Ms. Sellers sent to

Defendants on February 6, 2012 formally requesting a chance to be heard in order to clear her name. Thus, Defendants quite clearly also denied such request.

28.     Finally, the charge against Ms. Seller was made public by Defendants who intentionally divulged the false, stigmatizing charge against Plaintiff when Defendants posted a sign in the Wood County Dispatch room, which mandated that all other deputies have no contact with Samantha Sellers because she is on suspension and under Texas Rangers Investigation. This act was intentionally calculated to divulge the false charge against Plaintiff to persons outside the Wood County Sheriff's Office, because all peace officers employed by the several cities within Wood County were also required to use that room to complete paperwork subsequent to every arrest they make.

29.     Additionally, the charge against Ms. Sellers was mentioned frequently in Lt. Jerry Blaylock's internal investigation report regarding her termination, which makes it public, because a report on a peace officer's misconduct investigation that results in disciplinary action is not confidential and is subject to public disclosure under the Texas Public Information Act. Finally, the rumor that Ms. Sellers was under Investigation by the Texas Rangers was and is widespread among, not only the Wood County employees, but also other people in the surrounding communities.

30.     As a result of Defendant's statutory and constitutional violations, Plaintiff has suffered serious and substantial damages and injuries for which she requests the award of the following categories of damages:

      a. Mental anguish, including emotional pain, torment and suffering that Plaintiff has experienced from the tortious conduct of Defendants;

      b. inability to acquire substantially similar work due to the stigmatizing charge against her;

      c. The pecuniary loss of care in past lost wages, and loss of future earning capacity;

31. Pursuant to 42 U.S.C. § 1983, Plaintiffs, are also entitled to recover, and hereby request the award of exemplary damages, reasonable attorney's fees and costs of court.

## CLAIM UNDER § 554 OF THE TEXAS GOVERNMENT CODE AGAINST DEFENDANT WOOD COUNTY

32. Defendant Wood County is liable under § 554.002 of the Texas Government Code because it is a local governmental entity that terminated the employment of Plaintiff Samantha Sellers, a public employee, who in good faith reported a violation of law by Chief Deputy Criddle to the Wood County Judge and Wood County Commissioner's Court, which are both appropriate law enforcement authority.

33. Plaintiff was a public employee under the Texas Government Code § 554.001 because she was a Wood County Deputy Sheriff who was paid to perform services for Wood County, a municipality of the State of Texas.

34. Plaintiff made a good faith report to the Wood County Judge, Bryan Jeanes on or around the end of October 2011, that Chief Deputy Criddle had violated the law by retaliating against her for filing the March 28, 2011 EEOC complaint when Criddle unjustifiably moved her to the day shift. She also filed a formal grievance with her supervisor on October 27, 2011, which was subsequently appealed and heard by the Wood County Commissioner's Court alleging the same illegal conduct by Criddle at that same time. She had a subjective belief that Criddle had violated the law because she believed it was illegal to retaliate against a public employee for filing a complaint with the EEOC. Further, any objectively reasonable person in her position would have also believed such conduct was illegal. Her belief was reasonable in light of her training and experience, particularly because she had received paperwork from the

EEOC detailing the illegality of retaliation in response to filing such a claim. Moreover, she reported the retaliation in good faith because Chief Deputy Criddle was the officer who attempted to get her to sign the statement extending her original suspension, which formed the basis for her March 28, 2011 EEOC complaint.

35. Plaintiff made her report on Criddle's illegal retaliation to the appropriate law-enforcement authority because the County Judge and the County Commissioner's Court both have authority and power to investigate the illegality of her report on Chief Deputy Criddle, and to halt, change, or correct the alleged illegal retaliation by Chief Deputy Criddle.

36. Plaintiff suffered adverse personnel action as a result of reporting Chief Deputy Criddle for his unlawful retaliation against her because she was terminated. Chief Deputy Criddle, Lieutenant Jerry Blaylock, and Sheriff Bill Wansley all knew about the report on or about December 7, 2011, when her grievance detailing Criddle's unlawful retaliation was printed in the local newspaper. Further, at least Criddle knew about her report earlier because he was her supervisor that she filed her report with initially, which eventually was heard before the County Commissioner's Court. Finally, the alleged violation of policy for not making a written report regarding the Deanna Combs telephone call was merely a pretext to disguise the fact that Ms. Sellers was fired in retaliation for "whisteblowing." The fact that the Combs incident happened just a week after Plaintiff's grievance was published in the local newspaper is indicative of that fact as well.

37. Finally, Plaintiff timely initiated grievance procedures following the Wood County Sheriff's grievance policy on February 21, 2012 by submitting a formal grievance for her termination on February 15, 2012. Further, since Defendants have refused to acknowledge or

respond to that grievance, she is timely in filing this complaint within ninety (90) days from the date of the adverse action, her termination.

38. Because Plaintiff was a terminated in violation of the Texas Whistleblower Act, she requests all available statutory damages including past lost wages and benefits; future lost earnings and earning capacity; mental anguish damages for emotional pain; suffering, inconvenience; and loss of enjoyment of life. Plaintiff further requests the award of any exemplary damages, reasonable attorneys fees, costs of court, and prejudgment interest.

## VI.
## JURY DEMAND

39. Plaintiffs demand a trial by jury.

## VII
## PRAYER FOR RELIEF

40. For the reasons stated above, Plaintiffs Samantha Sellers, requests that the Defendants be summoned to appear and answer herein and then upon final trial or hearing, a judgment be entered in favor of the Plaintiffs and against the Defendant as follows:

    a. Awarding Plaintiffs actual damages in an amount that is within the jurisdictional limits of this Court;

    b. Awarding Plaintiffs punitive or exemplary damages in an amount that is within the jurisdictional limits of this Court;

    c. Awarding Plaintiffs reasonable and necessary attorney's fees and costs of court;

    d. Awarding Plaintiffs pre-judgment interest at the highest rate permitted by law;

    e. Awarding Plaintiffs post-judgment interest at the highest rate permitted by law; and

    f. Awarding Plaintiffs all such other and further relief, at law or in equity, to which they may show themselves to be entitled.

    Respectfully submitted,

By: /s/ Jarom Tefteller

TEFTELLER LAW, PLLC

403 W. Tyler Street

Gilmer, TX 75644

Tel: (903) 843-5678

Fax: (903) 680-2310

Email: jt@teftellerlaw.com

ATTORNEYS FOR PLAINTIFF